**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Alberto B. RINCON, Defendant–Appellant.**

**No. 03CA1748.**

Colorado Court of Appeals, Div. II.

Nov. 17, 2005.

Rehearing Denied Jan. 12, 2006.

Certiorari Denied June 12, 2006.*

---

* Justice EID does not participate.

Justice BENDER would grant as to the following issues:

Inadmissible testimony that a defendant is engaged frequently and routinely in buying or selling illegal drugs is highly prejudicial and, in this case, where the only evidence of "motive" was the defendant's alleged involvement in a bad drug deal, as so prejudicial as to violate due process and warrant reversal for a new trial. The court violated petitioner's right to confront the witnesses against him and his right to due process when it refused to permit him to cross-examine Ms. Espinoza about lies she had told to court officials during the pendency of this case. The trial court erred in accepting "expert" testimony from a police officer that most people are not able to pick offenders out of photo arrays, with no prior qualification of the officer as an expert in the field, and with no analysis whether the probative value of the evidence outweighed the unfair prejudice.

John W. Suthers, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler and Whitson, P.C., Hollis A. Whitson, Denver, Colorado, for Defendant–Appellant.

DAILEY, J.

Defendant, Alberto B. Rincon, appeals the judgments of conviction entered upon jury verdicts finding him guilty of reckless manslaughter, first degree assault, second degree assault, and two counts of crime of violence. We affirm.

Defendant was convicted of killing a woman and wounding two other people in a drive-by shooting outside a bar.

The prosecution's primary witness testified that, three weeks before the shootings, she and defendant had approached one of the victims and purchased from him what defendant thought was cocaine but turned out to be flour. According to that witness, in the early morning hours following the shootings, defendant came to her hotel room and told her that he had "shot ... the guy who burned [him]."

The prosecution also presented evidence that (1) a day after the shooting, defendant arrived with his wife and child at his brother's house in Garden City, Kansas, at four o'clock in the morning; (2) defendant admitted to his brother's roommate that "[he] f—— ed up" and needed money to leave town; (3) defendant's silver-blue Lincoln Town Car, with its custom-made rims, was identified by witnesses to the shooting as being the same or similar to the car (and rims) used in the drive-by shooting; (4) defendant's car had gunshot residue on and in it; (5) unspent 9 mm ammunition was recovered from defendant's brother's house, in the bedroom where defendant had been sleeping; (6) the ammunition was of the same caliber as that used in the shootings, and the manufacturer's mark on the ammunition matched that on shell casings found at the scene; and (7) while in jail, defendant wrote to a fellow detainee, asking him to lie about several matters (namely, the features and color of the car used in the shooting, the number of occu-

pants in the car, and the identity of the shooter as someone besides defendant), and to tell the prosecution's primary witness to either change her story or lie at trial.

Through various witnesses, defendant presented an alibi defense, namely, that he was at his own birthday party on the night of the incident. He argued that the prosecution's primary witness was to blame for the shooting and that he was nothing more than her scapegoat. He pointed, in this regard, to evidence that she had threatened one of the victims earlier that evening and she was identified by two witnesses as either having been in, or looking like one of the persons in, the car at the time of the shootings.

### I. Other Bad Acts Evidence

■ Defendant contends that his convictions must be reversed because the trial court improperly admitted evidence of his other bad acts. We disagree.

■ Unless admitted pursuant to CRE 404(b), evidence of other bad acts unfairly exposes a defendant to the risk of being found guilty based on the defendant's bad character rather than on evidence relating to the charged offense. *People v. Garner*, 806 P.2d 366, 369–70 (Colo.1991).

Here, the prosecution asserted that defendant fled to Kansas to avoid apprehension. To refute this, defendant elicited, on cross-examination of a witness, testimony that defendant often went there to visit both his family and his wife's family. The witness had not, however, mentioned this family purpose to law enforcement as a possible reason for defendant's presence in Kansas; instead, the witness mentioned another reason, namely, that defendant came to Kansas every two weeks about drugs. On redirect examination, and over defendant's objection, the prosecution elicited from the witness an acknowledgment that he had told an investigator that he saw defendant in Garden City every two weeks about drugs.

■ As an initial matter, we reject the prosecution's assertion that the witness's acknowledgment did not qualify as evidence of other bad acts. Without more, the statement which the witness acknowledged making implied that defendant was involved on a regular basis in some form of illegal drug activity.

The prosecution does not assert that this evidence was admissible under CRE 404(b). Rather, it asserts that the evidence was properly admitted under the "opening the door" doctrine.

■ The "opening the door" doctrine "represents an effort by courts to prevent one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression." *People v. Melillo*, 25 P.3d 769, 775 (Colo.2001). Application of the "opening the door" doctrine is subject to the considerations of relevance and prejudice required under CRE 401 and 403. *People v. Melillo, supra.*

Here, the prosecution could have elicited evidence that, although the witness had given a reason for defendant's presence in Kansas, "family" was not that reason. There was no need to further identify the reason given by the witness in the prior statement. Evidence of defendant's regular involvement in drug activity in Kansas had no tendency to demonstrate the prosecution's point that defendant fled to Kansas as a result of the shooting. If anything, it provided only another reason, wholly unrelated to the shooting, why defendant could have gone there. The evidence was not relevant to any issue in the case, and it impermissibly injected issues of defendant's bad character into the case. Consequently, we conclude that the trial court abused its discretion in admitting it.

■ Having found error, we must next determine whether it warrants reversal. We conclude that it does not.

■ Improper reference to a defendant's other bad acts is not per se reversible error. *See Vigil v. People*, 731 P.2d 713, 717 (Colo.1987)(improper reference to other bad acts evidence found harmless); *People v. Vigil*, 718 P.2d 496, 505–06 (Colo.1986)(improper reference to other bad acts evidence did not require mistrial).

Indeed, reversal is not warranted unless the error substantially influenced the verdict or affected the fairness of the trial proceed-

ings. *See Masters v. People,* 58 P.3d 979, 1002–03 (Colo.2002)(evaluating the effect of inadmissible evidence of bad character under the test for assessing the harmlessness of nonconstitutional error). Under this test for harmless error, the issue is whether a reasonable probability exists that the error contributed to the defendant's conviction. *Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000).

Here, the potential for prejudice to defendant was significant. The prosecution's primary witness related that defendant admitted shooting one of the victims because that person had recently "burned" him in a drug deal. The inadmissible evidence, however, was the only evidence that tended to corroborate this aspect of the primary witness's testimony: because defendant was the type of person who engaged in drug activity on a regular basis, it was more likely that the primary witness was telling the truth.

Nonetheless, we conclude that the error in admitting this evidence probably did not contribute to defendant's conviction.

The impermissible reference to defendant's drug activity was brief and was never mentioned again, much less relied upon, by the prosecution during the two-week trial.

In closing argument, the prosecution as much as admitted that its primary witness may have been involved in some manner in the shootings. However, it also pointed to numerous items of evidence, independent of that provided by the primary witness, inculpating defendant. This evidence included the following: (1) defendant's flight to, and incriminating statements in, Kansas; (2) defendant's car, which was linked to the shooting by various eyewitnesses and which was found to have gunshot residue on and in it; (3) the recovery from defendant's bedroom in Kansas of the same type of ammunition, made by the same manufacturer, as that used in the shootings; and (4) the letter in which defendant asked a fellow detainee to lie on his behalf and to tell the prosecution's primary witness to either change her story or lie at trial.

Viewing the evidence in its totality, we conclude that the prosecution's case against defendant, apart from the primary witness's testimony, was strong.

Under the circumstances—where there was but one, brief mention of defendant's drug activities, which the prosecution did not thereafter seek to exploit, and where a strong case of guilt was presented, apart from the primary witness's testimony—we find it unlikely that the jury was moved to convict defendant based on impermissible, other bad act considerations. Because the one impermissible reference to defendant's drug activities did not substantially influence the verdict or impair the fairness of the trial, we conclude that the error was harmless. *See Masters v. People, supra,* 58 P.3d at 1003–04 (erroneous admission of drawings and writings revealing defendant's violent and prejudiced nature was harmless, in light of the lack of emphasis given to them by the prosecution, the existence of other admissible evidence reflecting such nature, and the substantial evidence of defendant's guilt).

Accordingly, defendant is not entitled to a new trial on this ground.

## II. Cross–Examination of Prosecution's Primary Witness

Defendant contends that the trial court violated his right to confront the witnesses against him and his right to due process by prohibiting him from cross-examining the prosecution's primary witness about her having lied to court officials during this case. We disagree.

Although the Confrontation Clause guarantees defendants the right to cross-examine adverse witnesses, the trial court has discretion to determine the scope and the limit of cross-examination, and its ruling will not be disturbed on review absent an abuse of discretion. *Vega v. People,* 893 P.2d 107, 118 (Colo.1995). A trial court may limit an attack on the credibility of a witness to avoid wasting time and to protect the witness from harassment or undue embarrassment. *See People v. Ray,* 109 P.3d 996, 1002 (Colo.App.2004); *see also Merritt v. People,* 842 P.2d 162, 166 (Colo.1992); *cf. Lawrence v. Taylor,* 8 P.3d 607, 611 (Colo. App.2000)("The relevancy of impeaching evi-

dence must be clear, must not raise collateral issues, and must be directed only at the witness' credibility, and not at the witness' moral character.").

Here, the trial court denied defendant's request to cross-examine the prosecution's primary witness regarding (1) her failure to inform the court, when she was sentenced, that she was pregnant, (2) her alleged drug use during her pregnancy, and (3) lies she told her probation officer about her lack of prenatal care. The trial court found that this line of questioning was not relevant to the case and, if permitted, would possibly expand the trial into a mini-trial on collateral issues.

We conclude that testimony related to the primary witness's pregnancy would have injected collateral issues into the case and unduly prolonged the proceedings. *See People v. Cole,* 654 P.2d 830, 833 (Colo.1982)(questioning a witness regarding irrelevant issues improperly delays the trial by making the witness a defendant in a series of mini-trials); *People v. Pinkey,* 761 P.2d 228, 229 (Colo.App.1988)(quoting *People v. Taylor,* 190 Colo. 210, 213, 545 P.2d 703, 706 (1976): trial court responsible for assuring that the "sideshow does not take over the circus").

Further, the trial court provided defendant a full and fair opportunity to cross-examine the witness concerning her potential bias, prejudice, or motive for testifying against him. Defendant questioned her about her addiction to and sale of cocaine, inconsistencies in her statements, and her favorable plea bargain given in exchange for her testimony.

Under the circumstances, we conclude that the trial court did not abuse its discretion in limiting defendant's cross-examination of the primary witness. *See generally Merritt v. People, supra,* 842 P.2d at 165–66 (discussing the rights to cross-examine and confront adverse witnesses).

### III. Out–of–Court Statements

Defendant contends that the trial court violated his right to confront the witnesses against him, his right to due process, and his rights under the rules of evidence when it admitted numerous out-of-court statements. We disagree.

Initially, we note that all the statements were made by declarants who testified at trial and were available for cross-examination on their out-of-court statements. Accordingly, the trial court did not violate defendant's right to confrontation. *See People v. Argomaniz–Ramirez,* 102 P.3d 1015, 1018 (Colo.2004); *People v. Pineda,* 40 P.3d 60, 67 (Colo.App.2001).

With respect to defendant's separate due process arguments, he did not present them to the trial court, and, thus, we do not address them, other than to note that we discern no plain error. *See People v. Salazar,* 964 P.2d 502, 507 (Colo.1998) ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."). *But cf.* Crim. P. 52(b) (recognizing appellate court's discretion to notice "[p]lain errors or defects" that "were not brought to the attention of the court"); *People v. Petschow,* 119 P.3d 495, 505 (Colo. App.2004)("Plain error assumes that the court should have intervened sua sponte because the error was so obvious.").

Defendant has also made a blanket attack on all the out-of-court statements, asserting that they are not admissible as prior consistent statements under CRE 801(d)(1)(B) because any motive to fabricate existed at the time the witnesses made these statements. From our review of the record, however, many of the statements were not admitted as prior consistent statements, but, rather (and properly), as prior *inconsistent* statements under CRE 613 and § 16–10–201, C.R.S. 2005. With respect to the prior consistent statements, while defendant has challenged their admissibility under CRE 801(d)(1)(B), he has not asserted that they were inadmissible under common law rules relating to the use of such statements to rehabilitate witness testimony. *See People v. Eppens,* 979 P.2d 14, 20 (Colo.1999).

We conclude that defendant is not entitled to reversal on the grounds asserted here.

### IV. Opinion Evidence

Defendant contends that the trial court committed reversible error in allowing a police officer, who had not been qualified as

an expert witness, to testify about the likelihood of picking offenders out of photo arrays. We disagree.

Over defendant's objection, the trial court permitted the following line of inquiry:

THE PROSECUTOR: What is your experience as to whether or not people are able to pick photos out of photo lineups?

A: It—normally when people take a longer look at a person ... they're more apt to make an identification from a photo lineup. But sometimes the photos that we—somehow if they're black and white, it doesn't depict facial features. They're kind of just bland and not able to make identification.

. . . .

THE PROSECUTOR: From your experience and observations, *when an incident happens fairly quickly, are people sometimes unable to make any sort of identification?*

A: Yes.

(Emphasis added.)

In *People v. Stewart,* 55 P.3d 107 (Colo. 2002), the supreme court recognized the difficulty involved in classifying a police officer's testimony as either expert or lay opinion testimony. The court noted that "police officers regularly, and appropriately, offer testimony under [CRE] 701 based on their perceptions and experiences." *People v. Stewart, supra,* 55 P.3d at 123. However, the court stated, "when an officer's opinions require the application of, or reliance on, specialized skills or training, the officer must be qualified as an expert before offering such testimony." *People v. Stewart, supra,* 55 P.3d at 123.

Following *Stewart,* CRE 701 was amended to provide:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*Cf.* CRE 702 (expert testimony is based on "scientific, technical, or other specialized knowledge").

The amendment to CRE 701 mirrors the amendment adopted in 2000 to Fed.R.Evid. 701. With respect to the amendment to Fed. R.Evid. 701, the Advisory Committee to the Federal Rules of Evidence noted:

The amendment does not distinguish between expert and lay *witnesses,* but rather between expert and lay *testimony* . . . .

. . . .

The amendment incorporates the distinctions set forth in *State v. Brown,* 836 S.W.2d 530, 549 ([Tenn.] 1992), a case involving former Tennessee Rule of Evidence 701, a rule that precluded lay witness testimony based on "specialized knowledge." In *Brown,* the court declared that the distinction between lay and expert witness testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." The court in *Brown* noted that a lay witness with experience could testify that a substance appeared to be blood, but that a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma. That is the kind of distinction made by the amendment to this Rule.

As reflected in the text of the amendment to CRE 701 and in the Advisory Committee's Note to Fed.R.Evid. 701, the critical inquiry is whether a witness's testimony is based upon "specialized knowledge." "[A] person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 929 (10th Cir.2004)(quoting *Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 460 (5th Cir.1996)); *see also* David H. Kaye et al., *The New Wigmore: Expert Evidence* § 1.7, at 40 (2004)("[O]pinion testimony should only be considered lay and not expert opinion if the average person, having been in the same

position as the witness, could provide the testimony.").

■ In assessing whether an opinion is one "which could be reached by any ordinary person," courts consider whether ordinary citizens can be expected to know certain information or to have had certain experiences. *See United States v. McDonald,* 933 F.2d 1519, 1522 (10th Cir.1991)("[a] person possessing no knowledge of the drug world would find the importance of this fact impossible to understand"); *see also United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir. 1995)(agent's "observations [about nexus between drug trafficking and possession of weapons] are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"). But courts should also consider whether the opinion results from "a process of reasoning familiar in everyday life," or "a process of reasoning which can be mastered only by specialists in the field." *See* Fed. R.Evid. 701 advisory committee note; *see also United States v. Cano,* 289 F.3d 1354, 1362 (11th Cir.2002)(officer provided lay testimony regarding his interpretation of code in a book seized from co-conspirator, where officer did nothing more than "what the prosecutor invited the jury to do in closing argument"); *Commonwealth v. Ragan,* 438 Pa.Super. 505, 652 A.2d 925, 928 (1995)(officers could give lay testimony regarding results of field sobriety tests because, although field sobriety tests are not conducted by citizens, the test's indicia of intoxication are "within the understanding and experience of ordinary people").

Here, although the officer had experience with photo arrays that an ordinary citizen would not have had, the opinion the officer expressed was one which could be reached by any ordinary person. The observation that witnesses are sometimes unable to pick a person out of a photo array when an incident occurred quickly or when some of the person's features are not depicted therein, depends not upon any "demonstrable expertise," *see United States v. Figueroa–Lopez,* 125 F.3d 1241, 1246 (9th Cir.1997), but, rather, upon simple common sense and logic.

Because the officer's opinion was the result of a process of reasoning (namely, use of common sense and logic) familiar in everyday life, we conclude that the trial court did not err in admitting it under CRE 701 as lay opinion evidence.

*V. Sufficiency of Evidence*

■ Defendant contends that there was insufficient evidence to sustain his convictions. We disagree.

■ When examining the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. Sherwood,* 5 P.3d 956, 959 (Colo. App.2000).

■ In undertaking this analysis, we recognize that (1) we ordinarily do not assess the credibility of witnesses or resolve inconsistencies or contradictions in testimony, *People v. Gonzales,* 666 P.2d 123, 128 (Colo. 1983); (2) the prosecution must be given the benefit of every reasonable inference which can be drawn from the evidence, *People v. San Emerterio,* 839 P.2d 1161, 1164 (Colo. 1992); and (3) where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *See People v. Carlson,* 72 P.3d 411, 416 (Colo.App.2003).

Here, defendant asserts that the evidence is insufficient because the prosecution's primary witness was "inherently incredible and unbelievable as a matter of law."

■ We may only reject a witness's testimony if it is incredible as a matter of law. *People v. Mogul,* 812 P.2d 705, 710 (Colo.App.1991). Testimony is incredible as a matter of law if it is in conflict with fully established or conceded facts; it is testimony as to facts that the witness physically could not have observed or events that could not have happened under the laws of nature. Testimony that is merely biased, inconsistent, or conflicting is not incredible as a matter of law. *People v. Ramirez,* 30 P.3d 807, 809 (Colo.App.2001).

Here, the primary witness's testimony was not of a type that would qualify as incredible as a matter of law, and thus we are not at liberty to discredit it. Moreover, her testimony was corroborated by other strong circumstantial evidence of guilt, which we have already recounted in part I of this opinion.

Examining the evidence in its totality and in the light most favorable to the prosecution, we conclude that it was sufficient to sustain defendant's convictions.

## VI. Cumulative Error

Finally, we reject defendant's contention that his convictions should be reversed because the cumulative effect of the asserted errors deprived him of a fair trial. We have found but one error, and it was not sufficiently prejudicial to warrant a new trial. *See People v. Fears*, 962 P.2d 272, 285 (Colo.App. 1997)("Since we found no error that substantially prejudiced the defendant's right to a fair trial, there is no error to compound.").

The judgments are affirmed.

ROTHENBERG and LOEB, JJ., concur.