The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

David Warren VEREN, Defendant–Appellant.

No. 03CA1820.

Colorado Court of Appeals, Div. II.

Dec. 1, 2005.

Rehearing Denied Feb. 2, 2006.

Certiorari Denied July 17, 2006.*

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Amy E. Richards, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kathy Goudy, Carbondale, Colorado, for Defendant–Appellant.

LOEB, J.

Defendant, David Warren Veren, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a methamphetamine precursor, possession of manufacturing chemicals or supplies for a schedule II controlled substance, and driving under restraint. We affirm in part, reverse in part, and remand for a new trial.

A clerk at a convenience store contacted Officer Campbell of the Woodland Park Police Department to report that a person driving a blue pickup truck with no tailgate had, on several occasions, purchased large quantities of pseudoephedrine (Sudafed). The clerk observed the customer throwing empty boxes, stripped of their pills, into the trash outside the store. Officer Campbell asked the clerk to call him when the customer returned, which the clerk did, noting the license plate number of the truck. Officer Campbell looked up the motor vehicle record of the registered owner, defendant, and discovered that his license was revoked. The officer then shared this information with other officers, describing the vehicle as a blue pickup truck with no tailgate and its driver as a tall, thin white male with blond hair.

Some weeks later, Officer Turowski, who was fueling his car at the convenience store, saw a truck and driver matching the description given by Officer Campbell pulling out of the store's parking lot. He saw the truck turn the corner without using its turn signal and radioed Officers Campbell and Goings. Officer Goings saw the truck turn into another store's parking lot and the driver go into the store.

Officer Campbell arrived at the scene and parked so as to block the exit for defendant's truck. Officer Turowski arrived shortly afterward. Officer Goings motioned defendant to come out of the store, which he did. Goings asked to see defendant's driver's license, and defendant was able to produce only a Colorado identification card. Defendant stated to Officer Goings that his license had expired. Officer Goings ran a check on the status of defendant's license, confirmed that it had been revoked, and arrested him for driving while his license was under restraint.

The officers then searched the truck and found over 500 unopened pseudoephedrine tablets, three bottles of Heet gas line antifreeze, and five cans of Prestone automotive starting fluid. A number of the sealed boxes of pills were unusually full, with extra strips of pills consolidated into them. There was also a glue stick in the truck.

Defendant was charged with possession of pseudoephedrine with intent to use such product as a precursor in the manufacture of a controlled substance (methamphetamine), in violation of § 18–18–412.5, C.R.S.2005; possession of chemicals or supplies with intent to manufacture a schedule II controlled substance, in violation of § 18–18–405(1)(a), C.R.S.2005; and driving under restraint, in violation of § 42–2–138(1)(a), C.R.S.2005.

The jury found defendant guilty on all charges, and he was sentenced to concurrent ten-year prison sentences for the drug offenses and six months in jail for driving under restraint. This appeal followed.

I.

Defendant contends the trial court erred by denying his motion to suppress the stop by the officers, his initial statements made thereafter, and evidence from the subsequent search of his truck. We disagree.

■ In reviewing a trial court's denial of a motion to suppress, we defer to the court's findings of fact and reverse only where the court's conclusions are unsupported by its evidentiary findings or where it applied an erroneous legal standard. *People v. Ray*, 109 P.3d 996, 999 (Colo.App.2004). We re-

view the trial court's legal conclusions de novo. *People v. Schall*, 59 P.3d 848, 851 (Colo.2002).

■ The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution protect against unreasonable searches and seizures. The determination of whether a search or seizure is reasonable depends on the reason for and the extent of the intrusion. *People v. Archuleta*, 980 P.2d 509, 512 (Colo.1999); *see Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

■ Encounters between the police and citizens can be classified into three categories: consensual encounters, investigatory stops, and arrests. *Outlaw v. People*, 17 P.3d 150, 154 (Colo.2001). Investigatory stops and arrests are both seizures that implicate Fourth Amendment protections. *People v. Jackson*, 39 P.3d 1174, 1179 (Colo. 2002).

■ For an investigatory stop to comply with the Fourth Amendment, three conditions must be satisfied: (1) there is a specific and articulable basis in fact for suspecting that criminal activity has taken place, is in progress, or is about to occur (that is, "reasonable suspicion"); (2) the purpose of the intrusion is reasonable; and (3) the scope and character of the intrusion are reasonably related to its purpose. *People v. Archuleta, supra*. The court must examine the totality of the circumstances known to the police officers at the time of the stop. *People v. Salazar*, 964 P.2d 502, 505 (Colo.1998). An investigatory stop can be based on less than probable cause. *Terry v. Ohio, supra; People v. Archuleta, supra*.

■ For an arrest to be valid, it must be supported by probable cause. *People v. Dickinson*, 928 P.2d 1309, 1312 (Colo.1996); *People v. Washington*, 865 P.2d 145, 147 (Colo.1994). Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested. *People v. Dickinson, supra*. The prosecution bears the burden of proof to establish probable cause to support a warrantless arrest. *People v. Washington, supra*.

■ Here, defendant filed a motion to suppress the stop for lack of probable cause and to suppress any statements and evidence that were the fruit of that stop. On appeal, defendant argues that there was neither probable cause nor reasonable suspicion for the stop. We disagree.

At the suppression hearing, Officer Goings testified he had been contacted by Officer Campbell earlier in the week, and was given information that a blond white male, who owned a blue Ford pickup truck with no tailgate, had a driver's license that had been revoked. Goings had also been given the license plate number of the vehicle. Goings further testified that, on the day in question, he was contacted by Officer Turowski, who had seen the vehicle turn left without signaling. Officer Goings followed the vehicle to the store, checked over the dispatch radio to see whether the license plate number matched, and waited for the man to get out of the truck and move into better lighting so he could match his physical description. Officer Goings then motioned defendant out of the convenience store and asked to see his driver's license.

The trial court found that, based on his observation and the information provided to him, Officer Goings had a reasonable suspicion to stop defendant and ask to see his driver's license. The court thus found that defendant's initial statement to Officer Goings that his driver's license had expired was admissible. We conclude that the trial court's findings are supported by the record and that it applied the correct legal standard in determining that Officer Goings conducted a valid investigatory stop.

■ The record also shows that Officer Goings ran a check on defendant's driver's license and criminal record and found that the license had been revoked. Thus, we conclude the trial court correctly found that there was probable cause to arrest defendant for driving under restraint.

Defendant also argues that evidence from the search of his vehicle should have been

suppressed. We disagree because we conclude the search of defendant's vehicle was incident to a lawful arrest. *See People v. Salazar, supra,* 964 P.2d at 507.

When a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *People v. Kirk,* 103 P.3d 918, 922 (Colo.2005). Such a search may include the passenger compartment and any open or closed containers. *New York v. Belton, supra; People v. Kirk, supra.* The authority to search the passenger compartment incident to a lawful arrest is automatic and does not depend on the specific facts of each case. *People v. H.J.,* 931 P.2d 1177, 1183 (Colo.1997). This standard governs even when an officer does not make contact until the person arrested has left the vehicle. *Thornton v. United States,* 541 U.S. 615, 617, 124 S.Ct. 2127, 2129, 158 L.Ed.2d 905 (2004); *People v. Kirk, supra.* Such a search is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment. *Thornton v. United States, supra,* 541 U.S. at 623, 124 S.Ct. at 2132; *People v. Kirk, supra.*

Here, the search of defendant's vehicle was incident to his lawful arrest based upon probable cause, and all the evidence seized was in the passenger compartment of the pickup truck. Accordingly, the trial court did not err in denying defendant's motion to suppress.

## II.

Defendant contends the trial court abused its discretion and committed reversible error by admitting the lay opinion testimony of Officers Turowski and Campbell because it was, in effect, expert opinion testimony that was not properly admitted under CRE 702. We agree.

We review a trial court's evidentiary rulings for abuse of discretion. A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair.

*People v. Stewart,* 55 P.3d 107, 122 (Colo. 2002). Absent an abuse of discretion, we will not disturb a trial court's evidentiary rulings on appeal. *People v. Ibarra,* 849 P.2d 33, 39 (Colo.1993).

Whether the trial court abused its discretion here turns on whether admission of the officers' testimony was proper under CRE 701, because the prosecution did not seek to qualify the officers as expert witnesses under CRE 702.

In *People v. Stewart,* the supreme court recognized the difficulty involved in classifying a police officer's testimony as either expert or lay opinion testimony. The court noted that "police officers regularly, and appropriately, offer testimony under [CRE] 701 based on their perceptions and experiences." *People v. Stewart, supra,* 55 P.3d at 123. However, the court stated, "when an officer's opinions require the application of, or reliance on, specialized skills or training, the officer must be qualified as an expert before offering such testimony." *People v. Stewart, supra,* 55 P.3d at 123.

Following *Stewart,* CRE 701 was amended to provide:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*Cf.* CRE 702 (expert testimony is that which is based on "scientific, technical, or other specialized knowledge").

The amendment to CRE 701 mirrors the amendment adopted in 2000 to Fed.R.Evid. 701. With respect to the amendment to Fed. R.Evid. 701, the Advisory Committee to the Federal Rules of Evidence noted:

The amendment does not distinguish between expert and lay *witnesses,* but rather between expert and lay *testimony* . . . .

The amendment incorporates the distinctions set forth in *State v. Brown,* 836

S.W.2d 530, 549 ([Tenn.] 1992), a case involving former Tennessee Rule of Evidence 701, a rule that precluded lay witness testimony based on "special knowledge." In *Brown*, the court declared that the distinction between lay and expert witness testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." The court in *Brown* noted that a lay witness with experience could testify that a substance appeared to be blood, but that a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma. That is the kind of distinction made by the amendment to this Rule.

■ As reflected in the text of the amendment to CRE 701 and in the advisory committee's note to Fed.R.Evid. 701, the critical inquiry is whether a witness's testimony is based upon "specialized knowledge." "[A] person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *See Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir.2004) (quoting *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir.1996)).

In assessing whether an opinion could be reached by any ordinary person, courts consider whether ordinary citizens can be expected to know certain information or to have had certain experiences. *People v. Rincon*, 2005 WL 3071549, 140 P.3d 976 (Colo. App. No. 03CA1748, Nov. 17, 2005); *see also United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir.1994) ("a veteran police officer" testified from "specialized knowledge" that a particular amount of cocaine would likely be "for distribution and not for personal use"); *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir.1991) ("[a] person possessing no knowledge of the drug world would find the importance of this fact [the amount of cocaine possessed by the defendant] impossible to understand"); *State v. Rothlisberger*, 95 P.3d 1193 (Utah Ct.App. 2004) (*cert. granted* Nov. 24, 2004)(officer impermissibly testified as lay witness as to

quantity of methamphetamine likely being for further sale because this was beyond realm of common knowledge and state should have complied with expert witness notice requirements).

As noted by the division in *People v. Rincon, supra,* 140 P.3d at 983, courts should also consider whether the opinion results from "a process of reasoning familiar in everyday life," or "a process of reasoning which can be mastered only by specialists in the field." *See* Fed.R.Evid. 701 advisory committee note; *see also United States v. Figueroa–Lopez*, 125 F.3d 1241 (9th Cir.1997) (officers could not testify in detail as lay witnesses that defendant's actions were consistent with those of an experienced drug trafficker); *Ragland v. State*, 385 Md. 706, 870 A.2d 609 (2005) (officer could not testify as lay witness as to whether phone calls from service stations and cash sorted into different pockets related to drug transaction because such opinion testimony required specialized knowledge or experience).

Officer testimony becomes objectionable when what is essentially expert testimony is improperly admitted under the guise of lay opinions. Where an officer's testimony is based not only on his or her perceptions, observations, and experiences, but also on the officer's specialized training or education, the officer must be properly qualified as an expert before offering testimony that amounts to expert testimony. *People v. Stewart, supra,* 55 P.3d at 124.

In *People v. Rincon, supra,* this division held that a police officer's opinion testimony about the likelihood of picking offenders out of photo arrays was properly admitted as lay testimony under CRE 701 because the opinion was not based on specialized knowledge, but rather was the result of a process of reasoning familiar in every day life. We apply the same legal principles articulated in *Rincon,* but conclude that the officers' testimony here was based on specialized knowledge and thus should only have been admitted as expert testimony under CRE 702.

Here, Officer Turowski testified that he had been in law enforcement for four years and had participated in training given to all police officers in the police academy concern-

ing methamphetamine production and interdiction, several in-house training sessions, and seminars by various agencies. This training specifically included identification of the precursor chemicals required to manufacture methamphetamine. Officer Turowski had also participated in methamphetamine investigations.

Officer Turowski testified that seeing the large amount of pseudoephedrine through the window of defendant's truck drew his attention. He pointed out that there is a two- or three-box limit for purchasing pseudoephedrine in any store, and that "any time you see that [large amount] it brings a red flag of somebody that's possibly manufacturing."

Officer Turowski further testified that, during an inventory search of defendant's truck, the officers found other items, including the starting fluid and Heet, which were inside a bag in the passenger compartment of the vehicle. When Officer Turowski was asked to testify concerning the significance of the combined presence of Heet, starting fluid, and Sudafed, defendant objected on the grounds that the witness had not been qualified as an expert, that he was about to give expert testimony, and that the prosecution had not complied with the appropriate discovery and disclosure rules for expert witnesses. The trial court overruled the objection and allowed the testimony as lay testimony, ruling that defendant's arguments went to the weight and not the admissibility of the evidence.

Officer Turowski then described in greater detail his training concerning methamphetamine labs and his participation in methamphetamine lab investigations. After providing this background information, he identified the combination of items found in defendant's truck as precursors to methamphetamine manufacture. Further, he testified that there were posters about methamphetamine production on the walls of most police departments. Officer Turowski also described how methamphetamine is made, including how each of the chemicals is used in its production. He testified that he had never seen as much Sudafed in one vehicle as he found in defendant's truck.

On cross-examination, defendant asked Officer Turowski which specific ingredients could be used in the manufacture of methamphetamine, including identifying ingredients that were not present in defendant's truck. On redirect, Officer Turowski was asked to opine on the precise method of manufacture defendant might have contemplated using.

The prosecution also called Officer Campbell to testify. He testified that he had been in law enforcement for over seven years. He also was trained in methamphetamine laboratory investigation at the police academy and through two supplemental courses, and he stated that one reason all police were given this basic training is that one of the chemicals released as a gas in the manufacture of methamphetamine could be fatal. Officer Campbell also had experience cleaning up methamphetamine labs, both mobile and stationary.

Officer Campbell testified he was interested in the report of the store clerk because, in his experience, pseudoephedrine was a cheap ingredient for manufacture of methamphetamine. When he saw the large amounts of pseudophredrine tablets, starting fluid, and Heet in combination, Officer Campbell had "great concern," and he testified that, in his experience, defendant had the majority of the chemicals required for methamphetamine production. Defendant continued his objection to this line of questioning because Officer Campbell had not been endorsed as an expert witness. During Officer Campbell's direct examination, defendant further objected to the introduction of a diagram on methamphetamine production, which the trial court sustained. Defendant cross-examined Officer Campbell in detail about possible ingredients of methamphetamine and various methods of the manufacturing process.

Relying on *People v. Stewart*, defendant contends that the officers essentially gave expert testimony, which the trial court improperly admitted under the guise of lay opinion testimony. We agree.

Here, we analyze three separate aspects of the officers' testimony.

First, we consider the officers' testimony that possession of a large amount of nonpre-

scription pseudoephedrine is indicative of a person's intent to use such a product as a precursor in the manufacture of methamphetamine. We recognize that certain basic information about drugs may properly fall within the scope of lay opinion testimony. *See, e.g., People v. Frantz,* 114 P.3d 34, 40 (Colo.App.2004)(prosecution's evidence showing the stimulant effect of pseudoephedrine did not require testimony from a toxicologist, because the testimony of the wife of the defendant and a detective was rationally based on their individual experiences and perceptions). Indeed, § 18–18–412.5(2), C.R.S.2005, specifically lists pseudoephedrine as a potential precursor to methamphetamine manufacture. However, we conclude that the amount of pseudoephedrine required to manufacture methamphetamine is not within the common knowledge of ordinary citizens, but rather requires specialized knowledge. We find the following comments by the Utah Court of Appeals in *State v. Rothlisberger* particularly instructive:

> The question before us here ... does not deal with the common juror's ability to merely identify a particular substance, but instead deals with the common juror's ability to identify whether a particular quantity of an illegal substance is so large that it would likely be used for future sale. By definition, the only persons having such knowledge would be those who are either actually involved in the sale of illegal substances, or those who are involved in law enforcement's efforts to curb such sales. Either way, this knowledge must be regarded as specialized, and testimony that is based on that knowledge would therefore appropriately be characterized as expert testimony.

*State v. Rothlisberger, supra,* 95 P.3d at 1200 n. 5. Following this reasoning, we conclude the officers' opinion testimony here concerning the amount of Sudafed possessed by defendant should only have been admitted as expert opinion testimony under CRE 702. *Cf. People v. Rincon, supra* (officer's opinion testimony about the likelihood of picking offenders out of photo arrays was properly admitted as lay testimony under CRE 701).

Second, we consider whether it required specialized knowledge and training to opine, as both police officers did here, that possession of large amounts of pseudoephedrine in combination with the other chemicals and supplies found in defendant's truck indicated an intent to manufacture methamphetamine. Again, we conclude that such testimony was expert testimony under CRE 702.

The advisory committee note to Fed. R.Evid. 701 recognizes that a lay witness may testify that a substance appears to be a narcotic so long as a foundation of familiarity with the substance is established. However, the note goes on to state that if "that witness were to describe how a narcotic was manufactured, or to describe the intricate workings of a narcotics distribution network, then the witness would have to qualify as an expert under Rule 702." *See also United States v. Figueroa–Lopez, supra; State v. Rothlisberger, supra.*

Here, the officers testified not only that pseudoephedrine was a precursor, but also that the other items found in defendant's truck were ingredients or materials used in the manufacture of methamphetamine. Although certain of this information may be available to the public in some ways, such as from posters in police stations, the officers' own testimony shows that their knowledge was specialized and based on their police training and experience, which an ordinary person would not have. *See State v. Rothlisberger, supra.* Therefore, we conclude it was error to admit such testimony under CRE 701.

Third, we consider whether Officer Turowski's testimony describing how methamphetamine is manufactured and how the various precursor chemicals are used was expert testimony. Again, we conclude that such testimony is properly characterized as expert testimony, because it required even more detailed and specialized knowledge than the opinions concerning the combination of items found in defendant's truck.

▮ We also reject the People's argument that any error in the admission of the officers' testimony under the circumstances here was harmless.

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected ...." CRE 103(a). If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless. *People v. Stewart, supra,* 55 P.3d at 124.

Here, we recognize that, based on their training, experience, and specialized knowledge, the officers very likely could have been qualified as expert witnesses, in which case their testimony and opinions could have been appropriately admitted under CRE 702. Indeed, in many cases, an ordinary police officer may be properly qualified to give expert opinion testimony on a variety of subjects. In this case, however, we cannot conclude that admission of the officers' opinion testimony under CRE 701 was harmless.

The testimony of Officers Turowski and Campbell was the key testimony at trial that the items found in defendant's truck were precursors and materials used in the manufacture of methamphetamine. *See Ragland v. State, supra.* Further, defendant filed a pretrial motion requesting an order that the prosecution comply with CRE 702 and disclose the names of any expert witnesses it intended to call at trial and all underlying data and facts supporting the experts' opinions. The prosecution stated that it would provide such information to defendant, and the trial court indicated that the prosecution should comply with the spirit of defendant's motion. However, no pretrial expert disclosures were made by the prosecution.

Rather, at trial, the two officers were essentially allowed to give expert testimony under the guise of lay opinions, which is precisely what the supreme court cautioned against in *People v. Stewart.* When the prosecution proffered expert testimony by police officers without pretrial disclosure or qualifying them as expert witnesses, the defense may have been prejudiced. *See Roberts v. Grafe Auto Co.,* 701 So.2d 1093, 1099 (Miss.1997)(because the public holds police officers in great trust, there can be potential harm where a police officer gives expert testimony without first being qualified as such).

Because defendant did not have the benefit of pretrial disclosure of the officers' expert testimony and the bases of their opinions, he did not have the opportunity to evaluate the testimony in advance of trial or to obtain his own expert witness.

Under these circumstances, we cannot say with fair assurance that the error here did not substantially influence the verdict or impair the fairness of the trial. Accordingly, defendant's two possession convictions must be reversed and the case remanded for a new trial on those charges.

### III.

Finally, defendant contends the trial court erred in failing to grant his motion challenging the constitutionality of § 18–18–412.5 on its face and § 18–18–405, C.R.S.2005, as applied. The trial court did not rule on defendant's motion, and the People contend that defendant abandoned his constitutional challenge in the trial court.

The constitutionality of a statute cannot be decided on appeal if it has not been fairly presented to the trial court. *People v. McNeely,* 68 P.3d 540, 545 (Colo.App.2002). This is particularly true where the allegation is that the statute is unconstitutional as applied. To support such a claim, it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied. *People v. Patrick,* 772 P.2d 98, 100 (Colo.1989).

Because we are remanding for a new trial, we decline to address defendant's constitutional arguments. Rather, on remand, defendant may raise his constitutional challenge again for consideration and a ruling by the trial court.

The judgment is reversed as to the two possession convictions, and the case is remanded for a new trial on those charges and further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

Judge ROTHENBERG and Judge DAILEY concur.