The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

April 2, 2020

## 2020COA56

**No. 18CA0673, *People v. Dax Ace Anderson* — Constitutional Law — Due Process; Criminal Law — Competency to Proceed**

A division of the court of appeals considers whether a person must be adjudged incompetent to proceed where the person has made numerous statements and filings with the court that, although appearing somewhat delusional on their face, are reflective of a larger, yet atypical, anti-government system of beliefs shared by others in the country.

The division concludes that an atypical system of beliefs cannot alone be the basis upon which a defendant is incompetent to stand trial.

The division also concludes that the trial court did not misapprehend the competency standard, despite having made some

statements that the defendant was incompetent to waive his right to counsel.

COLORADO COURT OF APPEALS        **2020COA56**

Court of Appeals No. 18CA0673
Mesa County District Court No. 15CR487
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dax Ace Anderson,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE DAILEY
Navarro and Gomez, JJ., concur

Announced April 2, 2020

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Danielle C. Jefferis, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Under the law, a person is incompetent to proceed in a criminal case if he or she lacks (1) a rational and factual understanding of the criminal proceedings or (2) sufficient ability to consult with his or her lawyer with a reasonable degree of rational understanding in order to assist in the defense.  To be competent to proceed, then, a person's perceptions and understandings about the criminal justice process and the charges must be rational and grounded in reality.

¶ 2     In this case, we are called upon to determine whether a person must be adjudged incompetent to proceed where the person has made numerous statements that, although they may appear somewhat delusional on their face, are reflective of a larger, yet atypical, anti-government system of beliefs shared by others in the country.

¶ 3     Because we conclude that such a person need not be adjudged incompetent to proceed, we affirm the judgment of conviction of defendant, Dax Ace Anderson, entered on jury verdicts finding him guilty of (1) eleven counts related to sexual assaults on three children and (2) various sentence enhancers.

1

## I.    Background

¶ 4    Anderson was charged in April of 2015 with the alleged offenses in this case.  He was eventually tried and convicted thirty-one months later, in November 2017.  Over the course of the case, Anderson had nine attorneys appointed to represent him or to serve as advisory counsel.  The majority of these attorneys withdrew because of Anderson's refusal to work with them and lack of communication.

¶ 5    Between the court's multiple appointments of new counsel, Anderson's requests to proceed pro se, and Anderson's generally disruptive behavior during the proceedings, the preliminary hearing was delayed almost two years until February of 2017.  When Anderson refused to appear at the preliminary hearing, the court determined that he had waived his right to such a hearing, and the case proceeded to trial.

¶ 6    Over the course of the case, there was continued consideration given to Anderson's competence to proceed.  Three competency evaluations were performed on Anderson by two different psychologists at the Colorado Mental Health Institute at Pueblo. (Anderson's counsel had requested the first and third evaluations,

2

and the court had ordered the second one sua sponte based on the nature of Anderson's filings with the court.[1])  The result of each evaluation was the same: Anderson did not have any mental disability that would prevent him from interacting with counsel or understanding the facts surrounding the charges against him.[2] Based on these evaluations, along with its own questioning of Anderson during the case, the court concluded that Anderson was competent to proceed.

¶ 7     On the morning of trial, Anderson decided not to participate because, he said, the court did not have jurisdiction over him. When Anderson left the courtroom of his own accord, his appointed counsel tried the case in his absence.[3]

---

[1] For example, Anderson's filings continuously referenced tax law, the Uniform Commercial Code, and various inapplicable constitutional provisions.  The filings also stated often that "Dax Anderson" was a fictitious entity subjected to the frauds of the United States government.

[2] The second and third evaluations are contained in sealed portions of the record on appeal, and the second evaluation quotes the first evaluation.

[3] Anderson decided not to participate in the remainder of the trial too, leaving the courtroom each and every day of trial.

¶ 8    The defense presented at trial was that the three child victims' testimony was not credible. After a seven-day trial, the jury found Anderson guilty on all counts. Subsequently, the court sentenced him to an indeterminate sentence of at least 240 years in the custody of the Department of Corrections.

## II.    *Anderson Was Properly Found Competent to Stand Trial*

¶ 9    Anderson contends that the trial court erred in finding him competent to stand trial, despite his incoherent filings, courtroom statements, and inability to assist counsel. We disagree.

### A.    *Preservation, Standard of Review, and General Law*

¶ 10    Initially, we reject the People's assertion that Anderson failed to properly preserve this issue for appeal because neither he nor his counsel ever objected to the court's findings of competency.

¶ 11    To properly preserve an issue for appeal, a party's objection or request must be specific enough to (1) draw the court's attention to the asserted error, *Martinez v. People*, 2015 CO 16, ¶ 14; (2) provide the court with a meaningful opportunity to focus on the issue, *People v. Coughlin*, 304 P.3d 575, 582 (Colo. App. 2011); and (3) prevent or correct the error, *People v. Moore*, 226 P.3d 1076, 1082 (Colo. App. 2009).

¶ 12     Here, the issue of Anderson's competency to stand trial saturated the proceedings: defense counsel twice asked for and was granted competency evaluations, and the court was concerned enough about Anderson's competency to order yet another evaluation sua sponte.  Not only was the court given a chance to rule on the issue, it *did* rule on the issue.  Consequently, we consider the issue properly preserved for appellate review.

¶ 13     Where the issue has been raised, we review a trial court's competency determination for an abuse of discretion.  *People v. Price*, 240 P.3d 557, 561-62 (Colo. App. 2010).  A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, *id.* at 561, or if it applies an incorrect legal standard, *People v. Mondragon*, 217 P.3d 936, 939 (Colo. App. 2009).

¶ 14     Due process prohibits the trial of an incompetent defendant.  *People v. Wingfield*, 2014 COA 173, ¶ 32.  "In Colorado, a defendant's due process rights in regard to competency are protected by statute."  *Price*, 240 P.3d at 561.  Under the statute, a defendant is incompetent to proceed if "as a result of a mental disability or developmental disability," he lacks "sufficient present ability to consult with [his] lawyer with a reasonable degree of

rational understanding in order to assist in the defense," or "a rational and factual understanding of the criminal proceedings." § 16-8.5-101(12), C.R.S. 2019; *cf. Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (Under the Due Process Clause, the competence to stand trial inquiry focuses on whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.").

B.     *The Trial Court's Determination is Supported by the Record*

¶ 15     The trial court, without any objection from the parties, determined that Anderson was competent to proceed.  Its determination is supported by the competency evaluations.  In the competency evaluations, the psychologists concluded that Anderson was competent to proceed because he did not have a mental disability or developmental disability and he had sufficient ability to consult with a lawyer with a rational and factual understanding of the criminal proceedings he faced.

¶ 16     The first two competency evaluations, as well as other parts of the record, reflected the following:

- Anderson sustained a traumatic brain injury in approximately October of 2008, leaving Anderson with some reported memory problems;

- although Anderson was evaluated for malingering early in the case because he claimed he could not recognize his counsel, he later recognized counsel and recalled previous conversations when he and counsel had met with the psychologist;

- the psychologist noted, during the conversations, that Anderson logically connected his ideas;

- Anderson's initial, incomplete understanding of the legal process had improved over the course of his case because he had "bought many law books" and was studying because he had decided to represent himself;

- Anderson was generally familiar with terminology, the trial process, plea options, and the relationship between attorney and client;

- Anderson was aware he had been charged with multiple counts of sexual abuse on children and understood the general facts regarding the charges: where he was, who

the alleged victims were, and the possibility of spending life in prison if convicted;

- the psychologist was not concerned with Anderson's understanding of general legal principles and the facts surrounding the charges;

- the psychologist (1) noted the lengthy list of appointed defense counsel that had withdrawn from the case and (2) was concerned with Anderson's inability either to work with an attorney to plan a defense or to represent himself; and

- the psychologist noted that "[m]aking what seems to be an ill-informed choice as to whom he wants to help him proceed pro se does not preclude him from having a rational and factual understanding of the criminal charges he faces."

¶ 17 As to the third competency evaluation:

- it was very brief;

8

- Anderson largely refused to participate in the evaluation, as well as other programs within the jail, citing "Sovereign Citizenship" beliefs;[4]

- Anderson was described as being behaviorally stable and "his thought processes were coherent, logical, and goal-directed," and "although he endorsed beliefs related to the Sovereign Citizen movement, his thought content was not disturbed by a delusional belief system";

---

[4] Those who affiliate with "Sovereign Citizenship" believe in a particular interpretation of the common law and believe they are not subject to governmental statutes, proceedings, or jurisdictions. They believe the individual, a "flesh and blood" man (denoted in lowercase letters) is separate from a legally fictitious commercial entity imposed upon them by issuance of a birth certificate and other official documents (as governmental documents usually denote names in all capital letters). Through this fictitious entity, they believe, the United States government perpetrates fraud, making the individual a "creditor" of the fictitious entity. Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 158, 163, 166, 175 (2019) (discussing the finer details of the Sovereign Citizenship movement); *see, e.g.*, *Kilgore-Bey v. Fed. Bureau of Prisons*, Civ. A. No. RDB-17-1751, 2017 WL 3500398, at *2 (D. Md. Aug 14, 2017) ("Sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior.") (citation omitted).

- Anderson was able to describe the evidence in the case, his awareness of the role of the district attorney, and the roles of witnesses; and

- Anderson was also aware of the appointed advisory counsel but was still set on representing himself, suggesting that Anderson had the ability to make decisions about his case.

¶ 18 Given the contents of the evaluations, the lack of any objection by Anderson or his counsel to the conclusions stated therein, and the court's ability to observe Anderson,[5] we perceive no abuse of the court's discretion in determining him competent to stand trial.

### C. Anderson's Arguments Otherwise Are Unpersuasive

¶ 19 In so concluding, we necessarily reject Anderson's assertions that the court's determination was in error because, according to him, the record reflects that (1) he was delusional (i.e., his perceptions and understandings were not rational and grounded in

---

[5] *See People v. Morino*, 743 P.2d 49, 52 (Colo. App. 1987) ("The trial judge who . . . has had the opportunity of observing the defendant, his actions and general demeanor, has substantial discretion in determining whether an issue respecting his competency has been raised.").

reality); and (2) the court misapprehended the governing law, as demonstrated by its determination that Anderson was competent to proceed but not competent to waive his right to a lawyer and represent himself.

### 1. Anderson's Beliefs

¶ 20　In legal support of his first assertion, Anderson relies on the following pronouncement from another division of this court:

> [A] defendant's factual understanding of the proceedings, proper orientation as to time, place, and person, and his ability to furnish accurately information as to his past history and the events at issue are not alone sufficient to establish the defendant's competence. Rather, *the defendant's perceptions and understandings must also be rational and grounded in reality.*

*Mondragon*, 217 P.3d at 940 (emphasis added) (citation omitted).

¶ 21　As pertinent here, Anderson points to various statements he made in documents or in court. The following are examples of those statements:

- In a motion for writ of habeas corpus, Anderson wrote,

  > I Anderson: Dax Ace: the Natural Living-born man of God, to implore, motion, and direct this court, to take the following actions without any further sale, denial, delay, or obstruction.

11

. . . .

> Be it further noted that on & for the private &
> and public records of this case, that,
> Anderson: Dax Ace is the Authorized Agent for
> the corporate artifice & fiction known as "DAX
> ACE ANDERSON, ET AL," and that Natural,
> Living-born man <u>CANNOT</u> under any measure,
> or means, be used as "collateral" for the
> alleged "Debt Obligation," and under the
> Colorado Constitution's Bill of Rights, Sections
> #12 and 20, "no person <u>shall</u> be imprisoned for
> debt," and that, "No excessive bail, or cruel &
> unusual punishment shall be imposed, or
> inflicted."

- Anderson filed a "Notification of reservation of rights UCC 1-308/1-207."

- Anderson mailed documents to the court and district attorney titled "Notice of Acceptance of dishonor and default," "Notice of dishonor," and "Non-Negotiable Notice of Acceptance," for payments Anderson felt were owed to him under Uniform Commercial Code rules.

- In a document seeking a "Right of Master," Anderson wrote:

> I, dax-ace: anderson, a living and breathing
> man of the land.  Do hereby give right of
> master to all who work with The Bear's law
> and Forensics Team located at [a Florida
> address].  If my rights are violated and/or I am
> incapacitated due to an unlawful arrest or
> abduction caused by any officer or official

12

working outside the color of law and/or not following their oath of office.  The Bear's Law and Forensics Team is granted full rights by me to fight my case to the fullest extent of the true law.

- In another document, Anderson wrote, "From the beginning as god is my witness, I dax, a true man of God acknowledge all blessings given by God; repent all transgressions against God; and waive all claims without God[.]"

- In another document, Anderson wrote, "I Do Not 'Consent' to any Force or Physical Abuse . . . this is not a **Criminal** Issue. This is a **Tax** Issue. . . I Do Not 'Consent' and Do Not 'Contract.'"

- Anderson filed documents titled "Hell has No fury Like a Woman Scorned" and "**LEGAL NOTICE AND DEMAND**, FIAT JUSTITIA, RUAT COELUM, *Let right be done, though the heavens should fall.*"

- In court Anderson made statements such as (1) "Okay, another thing in here, it says without my consent you cannot proceed, federal Rules Title 28, Civil Procedures, Section 636, cannot proceed without my consent here"; (2) "Like I said before judge, I'm not that person.  I'm an authorized

representative for that person.  I do not argue facts.  I want full disclosure in settling his account, period"; (3) "I am doing a forgiveness of indebtedness and I'm instructing you to file a 1099-C within 72 hours.  If you do not do this, I am filing a criminal complaint with the Comptroller of the currency that you and everyone involved are guilty of tax evasion because you are qualified heir to receive property from defendant's estate and you haven't paid the tax on property . . . ."; and (4) "I'm the secured party creditor and I demand you provide of jurisdiction over me, the secured party creditor."

¶ 22  On the surface, these statements might appear, as Anderson argues, to depict a person who is not in touch with reality.  Digging deeper, however, these statements do not undermine the trial court's competency determination.

¶ 23  Anderson's statements indicate that he shares some common beliefs with people who identify with the "Sovereign Citizenship" movement.[6]

---

[6] The record reflects that at times Anderson denied that he was a "Sovereign Citizen," and at other times, he acknowledged that he was one.  Whether or not Anderson was a "Sovereign Citizen" is of

¶ 24    In one of the competency evaluations, a psychologist noted that beliefs akin to those held by "Sovereign Citizens" are not alone sufficient for a DSM-5 diagnosis of a mental disorder and not relevant to the competency issue.

¶ 25    We agree that such beliefs are not, in and of themselves, indicative of a mental disorder.  Nor are they dispositive of a competency determination.  In addressing a similar situation, the Ninth Circuit Court of Appeals said:

> It is not disputed that Neal made numerous comments and filed a variety of documents disputing jurisdiction and other "nonsensical" issues (e.g., [the] United States is a corporation. . . . as a corporation it cannot interact with human beings; "the sale of bonds based on Petitioners [sic] conviction by the court creates a financial conflict of interest".). However, Neal also professed a "sovereign citizen" belief system.  *His comments and conduct were indicative of that belief, not a lack of competence.  Neal cannot now use those beliefs as an expression of incompetency.  "In the absence of any mental illness or uncontrollable behavior, [Neal] had the right to present [his] unorthodox defenses and argue [his] theories to the bitter end."*

no consequence to us.  What is of consequence is that Anderson shares many beliefs with people who espouse that cause and who, as indicated below, have been found competent to proceed.

*United States v. Neal*, 776 F.3d 645, 657 (9th Cir. 2015) (emphasis added) (footnote omitted) (quoting *United States v. Johnson*, 610 F.3d 1138, 1147 (9th Cir. 2010)).  Other courts have reached a similar conclusion.  *See, e.g., United States v. Coleman*, 871 F.3d 470, 478 (6th Cir. 2017) ("[S]imply espousing sovereign citizen and other fringe views does not necessarily demonstrate lack of competence . . . ."); *United States v. Gooch*, 595 F. App'x 524, 527-28 (6th Cir. 2014) ("[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him. . . .  [T]he question is not whether a defendant has tax-protester or other fringe beliefs but whether possessing those beliefs establishes, without more, a deeper breakdown in communicative ability (i.e., ability to communicate with one's lawyers) or cognitive ability (i.e., ability to understand the ongoing legal proceedings).  We answer that question as several of our sister circuits have: with a resounding 'no.'"); *United States v. James*, 328 F.3d 953, 955-56 (7th Cir. 2003) ("Many litigants articulate beliefs that have no legal support . . . .  Sometimes these beliefs are sincerely held, sometimes they are advanced only to annoy the other side, but in neither event do they imply mental

16

instability or concrete intellect so deficient that trial is impossible. . . . One person with a fantastic view may be suspected of delusions; two people with the identical view are just oddballs.") (citation omitted); *State v. Tucker*, 62 N.E.3d 893, 898 (Ohio Ct. App. 2016) ("Other courts, when faced with similar circumstances, have consistently concluded that while such behavior may reflect unusual beliefs and may go so far as to obstruct trial court proceedings, they are not indicia of incompetency . . . .").

¶ 26 In line with these authorities, courts have uniformly rejected the notion that people are incompetent to proceed simply because they espouse or evidence a belief system similar to Anderson's. *See, e.g., Gooch*, 595 F. App'x at 526-27 (that a person was governed only "by God's law," presented tax arguments to combat criminal charges, and refused to speak to defense counsel "does not mean [he] cannot . . . understand the judicial proceedings around him"); *United States v. Landers*, 564 F.3d 1217, 1219 n.1 (10th Cir. 2009) (holding a criminal defendant, who believed in an alternative version of commercial law and planned to file liens and Uniform Commercial Code documents against prison wardens to recoup payment owed for unauthorized use of the defendant's name, was

17

not incompetent to stand trial); *United States v. Oehler*, 116 F. App'x 43, 44 (8th Cir. 2004) (per curiam) (holding that "performing incantations of the tax protest movement" and making legally frivolous arguments were not evidence of mental incompetence); *James*, 328 F.3d at 954-55 (holding the defendant's exclamations that he was a "secured party" in a criminal case was insufficient to undermine a finding of competency).

¶ 27    Because Anderson's unconventional beliefs do not necessarily reflect that he is delusional or out of touch with reality, they are not sufficient, in and of themselves, to undermine the court's competency determination.

*2.    Misapprehending the Competency Standard*

¶ 28    Anderson asserts that he was not competent to stand trial because the trial court concluded that he was not competent to waive his right to counsel and proceed pro se.  Because the standard for determining competency to proceed is the same as that for determining competency to waive counsel,[7] Anderson argues

---

[7] *See People v. Davis*, 2015 CO 36M, ¶ 16 ("A defendant is competent to waive the right to counsel if he meets the threshold standard for competence to stand trial articulated by the United

18

that the court should have recognized that he was as incompetent to proceed as he was to waive counsel.

¶ 29     True, on occasion, the court did say that Anderson was not "competent" to represent himself.  But read in context, the court's "competence" concern was not that Anderson lacked sufficient acumen or touch with reality to be capable of deciding whether to proceed (with or without counsel). Rather, the court's concerns were that (1) Anderson was ill-equipped or sorely lacking in the legal skills to represent himself and (2) Anderson was being obstinate toward the progression of the case.  Indeed, just over a year and a half before trial, the court allowed Anderson to waive counsel and proceed pro se with the help of advisory counsel, which demonstrates that the court did not misunderstand or misapply the applicable "competency" standard.[8]

---

States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).").

[8] The court subsequently determined that Anderson "waived the right to represent [himself] based on [his] behavior, . . . [his] disruptions, . . . [his] delaying tactics, . . . [his] inability to proceed with this case in a just and appropriate manner," and his hindrance of "the administration of justice over and over and over again."  It was not, the court noted, that Anderson did not understand the

19

## III. Disposition

¶ 30 The judgment of conviction is affirmed.

JUDGE NAVARRO and JUDGE GOMEZ concur.

---

proceedings, it was that he "refuse[d] to adhere to the rules of this courtroom." *See People v. Mogul,* 812 P.2d 705, 708 (Colo. App. 1991) (The right of self-representation "may not be used to impede the efficient administration of justice.").