22CA1031 Peo v Redd 09-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1031
Jefferson County District Court No. 20CR4050
Honorable Laura A. Tighe, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Clenon Shernar Redd,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE KUHN
Moultrie and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Ainsley Bochniak, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

* Sitting by assignment of the Chief Justice under provisions of Colo. Const.
art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Clenon Shernar Redd, appeals the judgment of conviction entered after a jury found him guilty of first degree felony murder, four counts of aggravated robbery, tampering with physical evidence, and two crime of violence sentence enhancers.  We affirm.

## I.     Background

¶ 2     We glean the following factual background from the evidence that the jury heard at trial.

¶ 3     One day in December 2020, C.W. (the victim) approached Amelia Perea near a motel where the victim had been staying.  They engaged in a conversation during which the victim, who was homeless, asked for help retrieving her car from her boyfriend.  Because Perea didn't have a car, she reached out to Redd, who agreed to give her and the victim a ride in exchange for gas money.

¶ 4     Redd picked up the two women at the motel but didn't take them to the victim's car.  Instead, after telling his passengers that something was wrong with his SUV, Redd pulled over to a parking lot behind a Safeway grocery store.  What happened next was captured on a surveillance video from a nearby apartment complex.  It showed the following:

- Redd getting out of the SUV, lifting the hood, and making a phone call;

- Redd standing at the front of his SUV and looking at a corner where the grocery store's and the apartment complex's parking lots meet;

- Redd opening the front driver's and passenger's side doors and popping the trunk;

- a man, later identified as Donald Robinson, climbing over a fence in the corner of the parking lots and approaching the SUV;

- Robinson changing course and walking past the vehicle toward the grocery store after seeing someone in the apartment complex's parking lot;

- Redd pacing back and forth along the passenger's side of his SUV;

- Robinson reappearing in the surveillance footage, walking close to the SUV, and stopping near the spot where he had climbed over the fence;

- Redd again walking in front of the SUV's open hood and looking in Robinson's direction;

- Redd slowly leaning inside the open front driver's side door;

- Robinson approaching the SUV from the rear driver's side, seemingly cocking a gun, and joining Redd;

- the two men engaging in a struggle with one of the passengers in the vehicle;

- approximately ten seconds later, Robinson running away from the SUV with an item in his hands;

- Perea — who was sitting in the front passenger's seat — getting out of the SUV, walking around the vehicle to the front driver's side area, briefly looking inside the vehicle, and hurriedly walking away from the scene; and

- Redd pulling the victim out of the SUV, laying her on the ground, and then driving away at a high rate of speed.

¶ 5    During the incident, the victim was robbed of her purse and was fatally shot once in the chest.  Robinson later admitted to the shooting.  The prosecution charged Redd with first degree felony murder predicated on robbery; five counts of aggravated robbery, premised on alternative theories of how Redd committed the offense (Counts 2 through 6); tampering with physical evidence; and two counts of crime of violence sentence enhancers based on allegations

that Redd "used, or possessed and threatened the use of, a deadly weapon," and caused the victim's death in connection with the crimes.[1] *See* § 18-3-102(1)(b), C.R.S. 2020;[2] § 18-4-302(1)(a)-(c), C.R.S. 2025; § 18-8-610(1)(a), C.R.S. 2025; § 18-1.3-406(1)(a), (2)(a)(I)(A)-(B), C.R.S. 2025.

¶ 6    In March 2022, the jury found Redd guilty of all charges except for Count 2, aggravated robbery involving the use of a deadly weapon with the intent to kill, maim, or wound the person being robbed. *See* § 18-4-302(1)(a). The trial court sentenced Redd to the custody of the Department of Corrections for life without the possibility of parole (LWOP) on the first degree felony murder count and a consecutive three-year term on the tampering with physical evidence count. The court then sentenced Redd on each of the four

---

[1] The prosecution also charged Redd with tampering with a deceased human body. *See* § 18-8-610.5, C.R.S. 2025. But after conducting a preliminary hearing, the trial court dismissed this charge because the evidence showed that the victim was still alive when Redd removed her from his SUV.

[2] Throughout this opinion, we cite the version of the felony murder statute in effect at the time of Redd's offense. Felony murder has since been reclassified as second degree murder. *See* Ch. 58, sec. 2, § 18-3-103(1)(b), 2021 Colo. Sess. Laws 236.

aggravated robbery convictions and merged them all into his conviction for first degree felony murder.

## II. Analysis

¶ 7 On appeal, Redd contends that his judgment of conviction can't stand because (1) section 18-3-102(1)(b), the felony murder statute under which he was convicted, violates his equal protection rights under the United States and Colorado Constitutions; (2) the evidence was insufficient to sustain his convictions for first degree felony murder and aggravated robbery; and (3) his sentence to LWOP is unconstitutionally disproportionate. We consider each of these contentions in turn.

### A. The Constitutionality of Section 18-3-102(1)(b)

¶ 8 Redd first contends that the first degree felony murder statute is unconstitutional because it violates his right to equal protection. We disagree.

#### 1. Equal Protection Principles and Standard of Review

¶ 9 The Equal Protection Clause of the Fourteenth Amendment provides that no state shall deny to any person the "equal protection of the laws," U.S. Const. amend. XIV, § 1, meaning that all persons who are similarly situated must receive like treatment,

5

*People v. Lee*, 2020 CO 81, ¶ 12. Although the Colorado Constitution doesn't contain equivalent language, the due process clause of the state constitution implies a similar guarantee. *Id.*; *see* Colo. Const. art. II, § 25. In the criminal law context, the state equal protection guarantee is violated "where two criminal statutes proscribe identical conduct, yet one punishes that conduct more harshly." *Dean v. People*, 2016 CO 14, ¶ 14.

¶ 10 When, as in this case, an equal protection claim alleges that a statute is unconstitutional because it treats two groups of people differently, the threshold inquiry is whether those two groups are similarly situated. *People v. Castillo*, 2022 COA 20, ¶ 18. "Unless they are similarly situated, the equal protection guarantee is not implicated." *Id.* (quoting *Buckley Powder Co. v. State*, 70 P.3d 547, 562 (Colo. App. 2002)).

¶ 11 In reviewing an equal protection challenge, we must employ the appropriate level of judicial scrutiny. *Dean,* ¶ 12. Rational basis applies when the challenged law does not impact a traditionally suspect class or implicate a fundamental right. *Id.* Redd does not allege disparate treatment based on a suspect class, and an adult has no fundamental liberty interest in freedom from

incarceration, *Castillo*, ¶ 20, so rational basis applies. "Under rational basis review, the challenging party must prove that the statute's classification bears no rational relationship to a legitimate legislative purpose or government objective, or that the classification is otherwise unreasonable, arbitrary, or capricious." *Dean*, ¶ 12.

¶ 12    We review de novo the constitutionality of statutes. *Id.* at ¶ 8. Statutes are presumed to be constitutional, *id.*, and declaring a statute unconstitutional is one of the gravest duties impressed upon the courts, *Woo v. El Paso Cnty. Sheriff's Off.*, 2022 CO 56, ¶ 20. Consequently, for a defendant to succeed with an equal protection challenge to a statute, the defendant must establish that the statute is unconstitutional beyond a reasonable doubt. *Dean*, ¶ 8.

¶ 13    We review constitutional and nonconstitutional errors that were not preserved by objection for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. To qualify as plain error, an error must be obvious and substantial. *Id.* We reverse only when the error so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the judgment of conviction. *Id.*

An error is obvious if, at the time of trial, the action challenged on appeal contravened a clear statutory command, a well-settled legal principle, or Colorado case law.  *See People v. Crabtree*, 2024 CO 40M, ¶¶ 42, 53.

## 2. Redd's Arguments

¶ 14    As relevant here, section 18-3-102(1)(b) provides that a defendant, acting either alone or with one or more persons, commits felony murder if the defendant commits robbery and "in the course of or in furtherance of the crime . . . , or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone."  At the time Redd committed his offense, felony murder was a class 1 felony, *see* § 18-3-102(3), that carried a mandatory LWOP sentence, *see* § 18-1.3-401(1)(a)(V.5)(A), C.R.S. 2025.  The General Assembly repealed section 18-3-102(1)(b) in 2021, and reclassified felony murder from first degree murder to second degree murder, a class 2 felony punishable by a term of sixteen to forty-eight years in prison.  *See* Ch. 58, sec. 2, § 18-3-103(1)(b), 2021 Colo. Sess. Laws 236; § 18-1.3-401(1)(a)(V.5)(A); § 18-1.3-406(1)(a), (2)(a).  The reclassification took effect on September 15, 2021, and applies only

to offenses committed on or after that date. *See* Sec. 6, 2021 Colo. Sess. Laws at 238.

¶ 15  Against the backdrop of this statutory amendment, Redd challenges the constitutionality of section 18-3-102(1)(b). Redd contends that his conviction under the first degree felony murder statute violates his right to equal protection because (1) he and Robinson "were similarly situated" because they were charged with the same offenses in connection with the incident, but Robinson was only convicted of second degree murder and sentenced to forty-three years in prison while Redd received LWOP; (2) section 18-3-102(1)(b) "has no rational relationship to a legitimate legislative purpose"; and (3) the statutory amendment provides for a lesser punishment of felony murders committed on or after September 15, 2021, but does not offer a reasonable distinction for

excluding from its application those offenders who had committed the crime before that date.[3]

### 3. Preservation

¶ 16     Initially, we disagree with Redd's position that he preserved his equal protection arguments in the trial court. In support, Redd directs us to part of his closing argument where he asserted that despite Robinson having "confessed to struggling with [the victim]" and shooting her to death, Robinson "got [forty-three] years in [the Department of Corrections] for second degree murder" while Redd was facing first degree murder charges. Redd argues that because he appeared pro se at trial and was only appointed advisory

---

[3] It is somewhat unclear from Redd's briefing if he argues that section 18-3-102(1)(b), C.R.S. 2020, is unconstitutional because it doesn't require a culpable mental state as to the resulting homicide, yet it imposes a greater punishment than the second degree murder statute that does prescribe a culpable mental state. To the extent Redd advances this argument, we disagree. *See People v. Morgan*, 637 P.2d 338, 345 (Colo. 1981) (rejecting the defendant's claim that the first degree felony murder statute violated equal protection principles because, unlike criminally negligent homicide, the statute didn't include a culpable mental state yet imposed a greater punishment); *People v. Jones*, 990 P.2d 1098, 1105 (Colo. App. 1999) (reaffirming the holding of *Morgan* and noting that "the fact that felony murder does not require proof of a mental state independent of the mental state associated with the underlying felony does not violate equal protection, even though other less serious forms of homicide do require proof of a mental state").

counsel, his statements should be broadly construed in support of preservation.

¶ 17 Even if we were to construe these comments broadly, they don't support preservation of this issue. First, Redd's general remarks about Robinson's conviction and the length of his punishment were made to the jury. Redd didn't make any argument to the trial court or seek any relief. To the contrary, the record shows that the prosecutor repeatedly objected to Redd's references to Robinson's case because Redd was arguing facts not in evidence. As well, the trial court repeatedly told Redd to stop his improper argument and eventually removed him.

¶ 18 Second, even if we construe the comments as being directed at the trial court, Redd didn't present to the court the arguments he raises in this appeal: He and Robinson were treated disparately even though they were similarly situated based on their charges, and Redd's conviction under the first degree felony murder statute violates his right to equal protection because that statute isn't

rationally related to a legitimate legislative purpose.[4]  Instead, Redd argued that it was unfair that Robinson was convicted of second degree, rather than first degree, murder despite confessing to shooting the victim.

¶ 19     Under these circumstances, we conclude that Redd didn't give the trial court a meaningful opportunity to address the equal protection arguments that he pursues in this appeal.  *See People v. Anderson*, 2020 COA 56, ¶ 11 (noting that to properly preserve an issue for appeal, a party's request must be specific enough to draw the trial court's attention to the asserted error and provide the court with a meaningful opportunity to focus on the issue).  Accordingly, we review these arguments for plain error.  *See Hagos*, ¶ 14.

---

[4] Likewise, Redd failed to raise this specific argument in his "Motion to Strike the Sentencing Provision of Life Without Parole and Apply the Current Sentencing Provisions Regarding Felony Murder," which he filed roughly one month after the trial court had imposed his sentence.  Rather, he merely asserted that his felony murder conviction and LWOP sentence implicated equal protection concerns because the legislature reclassified that offense as second degree murder.  And in his appellate briefing, Redd doesn't argue that this assertion alerted the court to the issues that he raises in this appeal.  Under these circumstances, the post-sentencing motion doesn't support preservation of his equal protection claims.

### 4. Redd's As-Applied Equal Protection Claim Fails

¶ 20    Constitutional arguments generally must be explicitly raised in the trial court not only to alert the court to the challenger's contentions but also to allow the court to ensure an adequate factual record on the issue. *People v. Allman*, 2012 COA 212, ¶ 13. That is particularly true when a party asserts on appeal that a statute is unconstitutional as applied to their conduct. *People v. Veren*, 140 P.3d 131, 140 (Colo. App. 2005). If a party fails to preserve their challenge to the constitutionality of a statute in the trial court, then the court has not had the opportunity to make factual findings regarding that claim for our review. *See Allman*, ¶¶ 15-17.

¶ 21    Here, Redd contends that because he and Robinson were similarly situated in connection to the incident, the trial court's application of the first degree felony murder statute to his conduct, as opposed to the second degree murder statute he alleges was applied in Robinson's case, constituted a violation of his right to equal protection of the laws. But because Redd didn't raise this as-applied constitutional challenge in the trial court, the court didn't make factual findings regarding the nature and

circumstances of Robinson's conviction and sentence, any plea bargain or basis for the conviction, or any other findings of fact that would facilitate our review. Accordingly, we lack a developed factual record to review this argument. *See id.*; *see also Veren*, 140 P.3d at 140 (For an appellate court to entertain an unpreserved as-applied constitutional challenge, "it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied."); *People v. Patrick*, 772 P.2d 98, 100 (Colo. 1989) ("We again stress that we cannot determine the as-applied constitutionality of a statute based upon an incomplete record of the facts.").

¶ 22 Regardless, Redd's argument that his first degree felony murder conviction is unconstitutional on equal protection grounds because he received a harsher punishment than his codefendant fails under plain error review. He directs us to no Colorado appellate opinion — and we're aware of none — holding that for purposes of an equal protection claim, a defendant and codefendant are similarly situated *merely* because they are charged with the same crime in connection with the same incident. To the contrary, cases addressing selective prosecution claims provide that disparate

14

treatment of defendants in relation to the same charge, standing alone, is insufficient to establish an equal protection violation. *See People in Interest of T.B.*, 2016 COA 151M, ¶¶ 66-67 (stating that a decision to prosecute must not be based on an unjustifiable standard such as race, religion, or other arbitrary classification, and the mere "fact that some people escaped prosecution under a statute is not a denial of equal protection"), *aff'd*, 2019 CO 53; *In re United States*, 397 F.3d 274, 285 (5th Cir. 2005) ("[S]haring a charge alone does not make defendants 'similarly situated' for purposes of a selective prosecution claim."). And importantly, Redd's admission that Robinson was convicted of second degree murder after *confessing* to killing the victim supports an inference that they were not similarly situated because Robinson accepted accountability for his crimes. *See State v. Moore*, 2014-Ohio-5135, at ¶ 51 n.11 (Ct. App.) (Gallagher, J., concurring in judgment only in part and dissenting in part) (noting that a defendant wasn't similarly situated to his codefendant for the purposes of sentencing, in part because the codefendant accepted responsibility for his actions by pleading guilty); *State v. Cottingham*, No. 2014AP648-CR, 2015 WL 13134097, at *2 (Wis. Ct. App. Apr. 1, 2015) (summary

disposition order) (affirming a postconviction court's decision that a defendant's sentence, which was harsher than the sentence his codefendant received, didn't implicate an equal protection violation because, among other things, the codefendant accepted responsibility by pleading guilty to the charged offense).

¶ 23    When Colorado statutory law or case law would not have alerted the trial judge to an unobjected-to error, the error can't be deemed obvious. *Crabtree*, ¶ 42; *see also People v. Taylor*, 2021 COA 133, ¶ 15 ("Statutes are entitled to a presumption of constitutionality, rooted in the doctrine of separation of powers, through which 'the judiciary respects the roles of the legislature and the executive in the enactment of laws.'" (quoting *Rocky Mountain Gun Owners v. Polis*, 2020 CO 66, ¶ 30)).  And because any factually dependent as-applied constitutional error that Redd raises in this appeal wasn't obvious at the time of his trial, the error wasn't plain.  *See Crabtree*, ¶¶ 41-43 (noting that an error is plain only if it's both obvious *and* substantial).

5.    The Remaining Equal Protection Arguments

¶ 24    As noted above, Redd asserts two additional arguments in challenging the constitutionality of the first degree felony murder

16

statute. First, he contends that section 18-3-102(1)(b) and its mandatory LWOP sentence don't further the state's legitimate interests in preventing and deterring crime, punishing criminal conduct, and rehabilitating defendants. The Colorado Supreme Court has recently held that an LWOP sentence for first degree felony murder isn't categorically unconstitutional, in part because that sentence serves the penological goals of retribution, deterrence, and incapacitation. *See Sellers v. People*, 2024 CO 64, ¶¶ 34, 36.[5] In doing so, the court observed that the fact that an LWOP sentence imposed under section 18-3-102(1)(b) perhaps doesn't promote every legitimate purpose of criminal legislation, such as rehabilitation of a defendant, doesn't automatically mean that the sentence is unconstitutional. *Id.* at ¶ 35. Consequently, we disagree with Redd's assertion that the statute is unconstitutional because it isn't reasonably related to a legitimate state interest.

¶ 25 And we also disagree with Redd's final equal protection argument that the General Assembly's decision to apply the amendments to the felony murder statute prospectively — i.e., the

---

[5] *Sellers v. People*, 2024 CO 64, was announced several months after Redd filed his opening brief in this case.

amendments only apply to offenses committed on or after the effective date of September 15, 2021 — constitutes an unreasonable classification of offenders in violation of equal protection of the laws. *See People v. Montoya,* 647 P.2d 1203, 1205-06 (Colo. 1982) (fixing punishment based on the date a crime is committed is reasonably related to a legitimate government interest in maintaining finality of judgments).

¶ 26    For all the reasons stated above, then, we conclude that Redd's conviction for first degree felony murder under section 18-3-102(1)(b) isn't constitutionally infirm on equal protection grounds.

## B.    Sufficiency of the Evidence

¶ 27    Redd next contends that the prosecution failed to present sufficient evidence in support of his convictions for first degree felony murder and aggravated robbery. We discern no error.

### 1.    Standard of Review and Applicable Law

¶ 28    "[W]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *Dempsey v. People,* 117 P.3d 800, 807 (Colo. 2005).

18

¶ 29    In doing so, we employ the substantial evidence test and ask whether the evidence — viewed as a whole and in the light most favorable to the prosecution — is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *Gorostieta v. People*, 2022 CO 41, ¶ 16. "A verdict cannot rest on guessing, speculation, conjecture, or a mere modicum of relevant evidence." *McBride v. People*, 2022 CO 30, ¶ 38. However, "[a]n appellate court may not serve as a thirteenth juror and consider whether it might have reached a different conclusion than the jury." *People v. Harrison*, 2020 CO 57, ¶ 33. Rather, we "must 'give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence.'" *Gorostieta*, ¶ 17 (quoting *Harrison*, ¶ 32).

¶ 30    "It is the fact finder's role to weigh the credibility of witnesses, to determine the weight to give all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence." *People v. Poe*, 2012 COA 166, ¶ 14. Consequently, determinations on issues of credibility and weight will not be disturbed on appeal "unless the evidence is legally insufficient to support a finding of

guilt beyond a reasonable doubt." *People v. Padilla*, 113 P.3d 1260, 1261 (Colo. App. 2005).

### 2. Sufficient Evidence Supported Redd's Conviction for First Degree Felony Murder

¶ 31    As an initial matter, the People contend that we should only consider whether there was sufficient evidence in support of Redd's conviction for first degree felony murder. The People argue, and we agree, that if we conclude that the evidence was sufficient as to that conviction, we need not address Redd's sufficiency challenge to his aggravated robbery convictions because the trial court properly merged those convictions into his felony murder conviction. *See People v. Bartowsheski*, 661 P.2d 235, 245-46 (Colo. 1983) (holding that because robbery is a lesser included offense of felony murder predicated on the robbery victim's death, a trial court may not enter convictions for both felony murder and the robbery).

¶ 32    Again, section 18-3-102(1)(b) provides that a defendant like Redd commits felony murder if, acting alone or with one or more persons, he commits robbery and, in the course of the crime, in the furtherance of it, or in the immediate flight therefrom, a person other than a participant in the crime dies. In turn, the defendant

20

commits robbery if he "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. 2025.

¶ 33 Here, the prosecution presented sufficient evidence for a reasonable juror to find that Redd committed a robbery, and in the course of that offense, his confederate, Robinson, caused the robbery victim's death. For starters, the record shows that Redd and Robinson knew each other and, on the day of the incident, they extensively communicated with one another. Detective Danny Simpson, who was qualified as an expert in forensic and historical cell phone analysis, detailed seven phone calls between Redd and Robinson within the hour before the shooting. He testified that the last call, which went to Robinson's voicemail, had been made so close to the shooting that when the first 911 call came in, the line between Redd's phone and Robinson's voicemail was likely still open. Detective Simpson said that in examining the "call detail records" associated with the motel's, the victim's, Redd's, and Robinson's phone numbers, he noticed "a pattern that each time that [the motel's], or [the victim's] phone spoke to Mr. Redd's phone,

Mr. Redd's phone would reach out to Mr. Robinson's phone right after that call was made and they would have a conversation."

¶ 34    Likewise, Detective Simpson and Dawn Fink, a digital forensic analyst, testified that Redd and Robinson had exchanged text messages about ten minutes before the shooting. Redd wrote, "It's the white bitch" — a description that matched the victim's race — and Robinson responded, "Wya."[6] And recall that the video surveillance footage shows Redd looking in Robinson's direction frequently. Indeed, just before Redd approached the SUV from the front driver's side door, he was standing over the engine compartment and moving his head as if gesturing to Robinson to join him, which Robinson did shortly thereafter.

¶ 35    Finally, the prosecution presented evidence that Redd took the victim's purse. Specifically, Perea testified that Redd grabbed the purse and pulled on it with so much force that he dragged the victim from the driver's side backseat over the center console. Perea said that Redd eventually stole the purse and handed it to Robinson. Then, as the victim was still leaning forward trying to

_____

[6] Detective Simpson and Fink testified that "wya" was an acronym for "where you at."

protect her belongings from the perpetrators, Robinson fatally shot her in the chest.

¶ 36    Viewing the above evidence in the light most favorable to the prosecution, *see Gorostieta,* ¶ 16, a reasonable juror could have found that Redd and Robinson devised a plan to rob the victim; Redd actively participated in carrying out that plan because he described the target to Robinson, brought her to the location where Robinson joined him, and took the victim's purse by force; and in the course of the robbery, Robinson killed the victim.  Because we conclude that the prosecution presented sufficient evidence in support of Redd's conviction for first degree felony murder, we don't address his claim that the evidence was insufficient to sustain the merged aggravated robbery convictions.

¶ 37    Accordingly, Redd's sufficiency challenges must fail.

### C.    Redd's LWOP Sentence for First Degree Felony Murder Isn't Categorically Unconstitutional

¶ 38    Lastly, Redd contends that the trial court erred by sentencing him to LWOP for first degree felony murder because that sentence is unconstitutional under the United States and Colorado Constitutions.  He argues both that his sentence is categorically

unconstitutional and, in his reply brief, that it is unconstitutional based on the facts of his case.

¶ 39    Both the Eighth Amendment and its Colorado analogue prohibit "cruel and unusual punishments." U.S. Const. amend. VIII; Colo. Const. art. II, § 20. The prohibition applies not only to "inherently barbaric" punishments but also to punishments that are "disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59 (2010). Proportionality claims generally come in two varieties: (1) categorical challenges to a sentence based on the nature of the offense or the characteristics of the offender and (2) challenges to the length of a specific sentence based on the particular circumstances of the case. *Sellers*, ¶ 18 (citing *Graham*, 560 U.S. at 59).

¶ 40    A defendant's claim under the latter category proceeds in two steps. *Wells-Yates v. People*, 2019 CO 90M, ¶ 10. In step one — an abbreviated proportionality review — a court must consider the gravity or seriousness of the defendant's offense along with the harshness of the imposed penalty. *Id.* at ¶ 7. If the abbreviated proportionality review gives rise to an inference of gross disproportionality, then the court must proceed to step two, an

24

extended proportionality review. *Id.* "In the rare situation in which the analysis advances to step two," the court should compare the defendant's sentence to sentences for other crimes in the same jurisdiction and to sentences for the same crime in other jurisdictions. *Id.* at ¶¶ 7, 15.

¶ 41 In light of these principles, we first consider the type of claim that Redd makes in challenging the proportionality of his LWOP sentence. After the trial court imposed the sentence, Redd filed, and the court denied, a "Motion to Strike the Sentencing Provision of Life Without Parole and Apply the Current Sentencing Provisions Regarding Felony Murder." He argued that an LWOP sentence for felony murder violated the state and federal constitutional prohibitions against cruel and unusual punishment because the General Assembly's decision to reclassify felony murder from a class 1 felony to a class 2 felony constituted "clear evidence that Colorado's evolving standards of decency no longer sanction[ed] LWOP for felony murder."

¶ 42 However, the Colorado Supreme Court recently considered and rejected this exact claim. *See Sellers*, ¶¶ 19-37. It held that "[b]ased on objective indicia of societal standards and evolving

25

standards of decency as expressed in legislative action and state practice, as well as the exercise of our independent judgment, . . . an LWOP sentence for felony murder for an adult offender is not categorically unconstitutional." *Id.* at ¶ 2. Thus, Redd's claim that his LWOP sentence for first degree felony murder is categorically unconstitutional must fail. *See People v. Melendez,* 2024 COA 21M, ¶ 19 ("'[W]e are bound by the rule[s] as expressed by the Colorado Supreme Court, and we are not free to depart from [its] precedent.'" (quoting *People v. Robson,* 80 P.3d 912, 914 (Colo. App. 2003))).

¶ 43    As for Redd's length-of-sentence proportionality claim, the People argue that he failed to properly raise, and thus preserve for appeal, this claim in the trial court. We agree.

¶ 44    As noted above, Redd filed his motion to strike the sentencing provision after the court had already sentenced him. The court concluded that since Redd was challenging the court's "imposing" a sentence that had already been imposed, the issue was moot. And to the extent that Redd intended to challenge his sentence subsequent to sentencing, the court concluded that the motion was procedurally defective. The court therefore denied the motion on

26

procedural grounds and determined that Redd "retain[ed] his statutory rights to bring postconviction motions pursuant to Crim. P. 35."

¶ 45 Since the trial court didn't rule substantively on Redd's post-sentencing proportionality challenge — and since Redd doesn't challenge the mootness or procedural denial rulings — we conclude that Redd has not yet properly raised a length-of-sentence proportionality challenge for our review.[7]

### III. Disposition

¶ 46 The judgment is affirmed.

JUDGE MOULTRIE and JUSTICE MARTINEZ concur.

---

[7] In addition, Redd's opening brief only focuses on the statutory change, which is just one factor that a court must address when conducting an abbreviated proportionality review. But Redd doesn't identify in his opening brief, let alone discuss, any facts in *his* case establishing gross disproportionality of his LWOP sentence. In other words, Redd doesn't argue in his opening brief that the trial court erred by imposing the LWOP sentence because that sentence was grossly disproportionate to the circumstances of his particular case. While Redd contends for the first time in the reply brief that his LWOP sentence was grossly disproportionate considering the nature of his conduct, we decline to consider that argument. *See People v. Vanderpauye*, 2021 COA 121, ¶ 69 n.10 ("We do not address issues raised for the first time in a reply brief."), *aff'd*, 2023 CO 42.