24CA0353 Peo v Gwaltney 12-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0353
El Paso County District Court No. 09CR688
Honorable Laura N. Findorff, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Taylor Lane Gwaltney,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE MOULTRIE
Kuhn and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Taylor Lane Gwaltney, appeals the postconviction court's denial of his Crim. P. 35(c) motion without an evidentiary hearing. We affirm.

## I.    Background

¶ 2    The victim was found deceased on a pedestrian bridge after police were alerted to the location of his body by an anonymous call. The victim, who was unhoused at the time of his death, died from severe head trauma. Police investigated Gwaltney, who lived nearby and had told several acquaintances that he had beaten a "bum" to death on the bridge.

¶ 3    The prosecution charged Gwaltney with first degree murder. Gwaltney's first trial ended in a mistrial after Cy Ormsby Jr. — a witness for the prosecution — invoked his Fifth Amendment right to remain silent.

¶ 4    After a second trial, a jury convicted Gwaltney as charged. The trial court imposed a life sentence without the possibility of parole. Gwaltney appealed the conviction, which was affirmed by a division of this court. *People v. Gwaltney*, (Colo. App. No. 10CA1272, Nov. 21, 2012) (not published pursuant to C.A.R. 35(e)).

1

¶ 5    Gwaltney filed a pro se Crim P. 35(c) motion for postconviction relief.  As relevant here,  Gwaltney's pro se motion asserted claims for ineffective assistance of counsel based on allegations that his counsel failed to "point out" Ormsby as an alternate suspect and failed to investigate whether Gwaltney was competent at the time of trial.[1]

¶ 6    The trial court appointed Gwaltney postconviction counsel who filed a supplement to Gwaltney's pro se Crim. P. 35(c) motion (jointly, the postconviction motion).[2]  In the supplement, Gwaltney's postconviction counsel asserted additional claims for ineffective assistance of counsel based on trial counsel's failure to (1) pursue

---

[1] Gwaltney's pro se motion also asserted his trial counsel was ineffective by failing to (1) investigate his mental illness at the time of the murder; (2) properly cross-examine a coroner witness; (3) properly cross-examine a different witness about their inconsistent statements; (4) move to suppress "evidence of bloody pants"; and (5) object to the prosecution's reference to certain physical evidence not introduced at trial.  Gwaltney doesn't reassert these claims on appeal; we therefore deem them abandoned.  *People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

[2] Neither Gwaltney nor the People indicate why Gwaltney's appointed counsel didn't supplement his pro se motion, which was filed in 2014, until 2020.  Nor is it clear from the record what the delay was.  However, because there is no time limit for bringing postconviction challenges to class 1 felony convictions, § 16-5-402(1), C.R.S. 2025, Gwaltney's pro se motion and the supplement were each timely filed.

2

an alternate suspect theory of defense and (2) assert that Gwaltney's medications interfered with his ability to follow the trial proceedings and assist in his defense. Gwaltney requested an evidentiary hearing on the issues raised in his postconviction motion, as well as an order vacating his judgment of conviction and granting him a new trial. The postconviction court issued a written order summarily denying Gwaltney's postconviction motion without a hearing.

¶ 7 Gwaltney now appeals, contending that the postconviction court erred by denying his postconviction motion without a hearing because he set forth facts showing that his trial counsel provided ineffective assistance of counsel by failing to (1) endorse an alternate suspect theory of defense and (2) argue that the side

effects of Gwaltney's medications negatively impacted his competency[3] during trial.  We reject both contentions.

## II.     Applicable Legal Principles

¶ 8      A defendant is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).  To succeed on a Crim. P. 35(c) ineffective assistance of counsel claim, a defendant must show that (1) counsel performed deficiently and (2) the deficient performance prejudiced the defendant.  *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 6 (citing *Strickland*, 466 U.S. at 688).  It is the defendant's burden to prove both *Strickland* prongs by a preponderance of the evidence.

---

[3] Throughout his briefing, Gwaltney articulates this argument by stating that his trial counsel was ineffective by failing to "raise the issue" that Gwaltney's mental health and "daily psychiatric medications interfered with his ability to follow the trial proceedings and assist in his defense."  Thus — despite not using the term "competency" anywhere in his briefing — Gwaltney's argument is in essence an assertion that his trial counsel should have raised the issue of his legal competence under section 16-8.5-102(2)(b), C.R.S. 2025.  *See also* § 16-8.5-101(12), C.R.S. 2025 ("'Incompetent to proceed' means that, as a result of a mental disability . . . , the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense . . . .").

*People v. Corson*, 2016 CO 33, ¶ 34; *People v. McDowell*, 219 P.3d 332, 339 (Colo. App. 2009).

¶ 9    To satisfy the first prong of *Strickland*, the defendant must prove that counsel's acts or omissions "fell outside the range of professionally competent assistance." *People v. Luong*, 2016 COA 13M, ¶ 9 (quoting *People v. Rodriguez*, 914 P.2d 230, 294 (Colo. 1996)); *Strickland*, 466 U.S. at 687. To satisfy the second prong of *Strickland*, a defendant must prove that he was prejudiced by counsel's deficient performance; said differently, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Luong*, ¶ 9 (quoting *Strickland*, 466 U.S. at 694).

¶ 10    We review de novo a postconviction court's decision to summarily deny a Crim. P. 35(c) motion. *People v. Cali*, 2020 CO 20, ¶ 14. To warrant a hearing, a defendant must assert facts that, if true, would provide a basis for relief. *People v. Simpson*, 69 P.3d 79, 81 (Colo. 2003). A court may deny a Crim P. 35 motion asserting ineffective assistance of counsel without a hearing if "the existing record establishes that the defendant's allegations, even if

proven true, would fail to establish one or the other prong of the *Strickland* test." *Ardolino*, 69 P.3d at 77.

### III. Failure to Endorse an Alternate Suspect Theory of Defense

#### A. Additional Facts

##### 1. First Jury Trial

¶ 11 Before his first trial, Gwaltney discussed with his defense counsel[4] whether to present an alternate suspect defense. His counsel decided to proceed with a general denial defense, arguing that the prosecution could not meet its evidentiary burden.

¶ 12 During the trial, Ormsby — a friend of Gwaltney's with whom Gwaltney had lived — testified as a witness for the prosecution. During direct examination, Ormsby acknowledged lying to the police during the investigation and made several conflicting statements — including some suggesting he had more knowledge of the facts surrounding the crime than he had acknowledged before trial. The trial court raised a concern about Ormsby possibly incriminating himself and stopped Ormsby's testimony until he had the opportunity to consult with court-appointed counsel.

---

[4] The same two-attorney team represented Gwaltney at each trial.

¶ 13    During the break in Ormsby's testimony, the parties and the court discussed the possibility of prosecutorial immunity for Ormsby. During that conversation, defense counsel said, "[I]t's our position that all along [Ormsby] has been an alternate suspect." Defense counsel also said that she had "recently" received discovery statements that placed Ormsby at the scene of the crime, and that she intended to cross-examine Ormsby about these statements and other evidence indicating Ormsby was involved in the crime.

¶ 14    After being advised by counsel, Ormsby asserted his Fifth Amendment right to remain silent, and the court declared a mistrial because of defense counsel's resulting inability to cross-examine Ormsby.

## 2. Second Jury Trial

¶ 15    Before Gwaltney's second trial, the prosecution filed a motion seeking to exclude Gwaltney from presenting evidence that Ormsby was an alternate suspect. In response, the defense said that they didn't intend to endorse an alternate suspect defense or present specific evidence of Ormsby as an alternate suspect but would raise issues about the sufficiency of the investigation and evidence.

¶ 16    The prosecution called Ormsby as a witness in Gwaltney's second trial, and Ormsby again asserted his Fifth Amendment right to remain silent.

¶ 17    In closing argument, defense counsel argued that the jury didn't hear from Ormsby, that Ormsby knew where evidence was located, and that the police didn't reliably investigate Ormsby. Defense counsel also suggested that more than one person was involved in the murder, with the "best person" being Ormsby.

### B.    Analysis

¶ 18    Gwaltney argues that his trial counsel were ineffective because they failed to pursue an alternate suspect defense alleging that Ormsby was primarily responsible for the victim's death. Gwaltney alleges that he was prejudiced by counsel's performance because had his counsel endorsed an alternate suspect defense, the jury would have reasonably doubted his responsibility for the victim's death. We conclude that Gwaltney has failed to prove the second *Strickland* prong.[5]

---

[5] Because we conclude that trial counsel's conduct didn't prejudice Gwaltney, we need not address whether counsel's performance was deficient. *See Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

8

¶ 19    Gwaltney essentially argues that had his trial counsel endorsed an alternate suspect defense, the jury would have been able to receive and consider additional evidence implicating Ormsby. But he doesn't explain how merely endorsing an alternate suspect defense would have made certain evidence admissible. Here, much of the evidence that Gwaltney asserts should have been admitted consisted of statements Ormsby allegedly made related to the crime. But Ormsby asserted his right not to testify, and his alleged statements still needed to meet an applicable hearsay exception to be admissible. *People v. Elmarr*, 2015 CO 53, ¶ 32. The trial court found much of this evidence was inadmissible hearsay and expressed that some of this evidence appeared to be inadmissible because it wasn't relevant. And because Gwaltney doesn't explain how his trial counsel's endorsement of an alternate suspect theory would have resulted in a different trial court ruling or in any way have made this evidence or any other evidence in his defense admissible, he hasn't established that his trial counsel's performance prejudiced him. To the extent that Gwaltney argues that endorsing an alternate suspect theory would have resulted in an evidentiary hearing and entitled him to a jury instruction, he

9

hasn't explained how this would have resulted in the admission of additional evidence or otherwise developed this argument.

### IV. Failure to Raise Gwaltney's Competency During Trial

¶ 20 Gwaltney's postconviction motion asserts that he "was incompetent to proceed" and that the side effects of his prescribed medications "significantly impaired his ability to participate or even follow the trial proceedings." Gwaltney says his counsel were aware that he was falling asleep during trial, and he asserts that he had disclosed the side effects of his medications to his counsel who failed to raise these issues with the court. He contends that in an evidentiary hearing, he would have testified that one of his medications — which his mental health provider discontinued in the middle of the second trial — made him "groggy and sleepy" and amplified his inability to focus and retain information.

¶ 21 Gwaltney asserts that he was prejudiced by trial counsel's deficient performance because the jury would have acquitted him due to the "abundant evidence of [his] [i]nsanity," or that, at a minimum, the trial would have been delayed until his competency was restored. Gwaltney further asserts that if his medications had been modified, he would have been able to focus on trial and better

10

assist in his defense.  He attached to his postconviction motion exhibits detailing his prescribed medications and notes from his mental health provider in support of these arguments.

¶ 22     Accepting Gwaltney's allegations as true, Gwaltney hasn't demonstrated that his mental health issues amounted to legal incompetence.  A defendant is incompetent to proceed only if, "as a result of a mental disability," he lacks either "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding in order to assist in the defense" or "a rational and factual understanding of the criminal proceedings." § 16-8.5-101(12), C.R.S. 2025; *People v. Anderson*, 2020 COA 56 ¶ 14.  Thus, Gwaltney's allegation that he was incompetent is conclusory, and a "conclusory allegation is insufficient to establish prejudice under *Strickland*."  *People v. Villanueva*, 2016 COA 70, ¶ 68.

¶ 23     Gwaltney also hasn't shown that being sleepy and groggy during trial impacted his ability to rationally consult with his lawyers or impaired his ability to understand the proceedings.  To the contrary, Gwaltney's pro se motion demonstrates he understood the nature of the case and the severity of the charges.

Furthermore, Gwaltney doesn't explain how he would have additionally assisted his trial counsel or how his assistance to trial counsel would have otherwise affected the outcome of his trial.

¶ 24    Thus, Gwaltney hasn't shown that his counsel's failure to raise his competency with the court prejudiced him. And because Gwaltney failed to prove the second *Strickland* prong with respect to this claim, the postconviction court didn't err by denying this claim without a hearing.

## V.    Disposition

¶ 25    The postconviction court's order is affirmed.

JUDGE KUHN and JUSTICE MARTINEZ concur.